This morning, the first case on the call of the docket is agenda number one. Case number one three zero nine three zero zero people versus Brown. Are the attorneys prepared to proceed? All right. Would the attorney for the appellate please step up to the podium? Tell us your name, who you represent and proceed with your argument. May it please the court. Good morning. I'm Assistant Attorney General John Moynihan on behalf of the people. In this case, the trial court below correctly denied petitioner Lee to file a successive post-conviction petition for two reasons. First, the proposed petition did not allege a constitutional defect in the original 1995 proceeding. And second, in any event, petitioner's argument that the law changed 26 years later so his sentence should be vacated is meritless. First, because that change was prospective only, not retroactive. And second, because it was a substantive change, not a mere clarification of what the law he was sentenced under had always meant. Beginning with the first point, the proposed successive post-conviction petition didn't allege a constitutional defect and it didn't allege any defect in the original 1995 sentencing. First of all, petitioner alleges that he should get the benefit of a subsequent statutory change. It's a statutory argument, not a constitutional argument. And petitioner cannot point to any case holding that he has a constitutional right to the benefit of a subsequent change in a sentencing statute. Does this Court's decision in People v. Stewart give us any guidance in this case? It does, although it does on the second issue, not the validity of his post-conviction petition. And I'm happy to pick that up if that's what the Court would like to address first. Sure. Stewart doesn't apply to this case because the statutory section that Stewart was addressing has significant differences from the statutory section that petitioner was sentenced under. So Stewart addressed 730 ILCS 5-4.5-95B, Section 95B. This case deals with 95A. Stewart found that the 2021 amendment to 95B was a clarification. It was the legislature elucidating what it had always meant by the phrase 21 years of age or older, a phrase that was always in Section 95B. Section 95B always required a defendant to be 21 years of age or older for that sentencing enhancement to kick in. Section 95A did not share that statutory requirement. So the original version of 95A had no age requirement whatsoever. A 2016 amendment added an age requirement that the defendant be 18 at the time of the third Class X conviction in order for that sentencing enhancement to apply. Wait a minute. So are you saying that Stewart applies to 95A? No. Stewart does not apply to 95A. Because the 2021 amendment to 95A was not a clarification, it has no hallmarks of a clarification of the law. So 95—the hallmarks of a clarification of the law rather than a substantive amendment are that the new law is consistent with a reasonable interpretation of the prior version of the law, that there is ambiguity in the prior version of the law as shown by confusion among the reports. And the other hallmark is that the legislature actually says we are clarifying what the prior version of the law meant. Is it correct that in the act that he was originally sentenced under, there was no age requirement? Correct. No age requirement whatsoever. So it wasn't amended by the two subsequent pieces of—subsequent amendments to that act. The subsequent amendments changed the age requirements in 95A. But they didn't—but there was nothing to change in the 33B-1 part of the act, correct? Because the age was not incorporated in that provision. That's correct. I should have said the 2016 amendment added a new age requirement. Right. And then the 2021 amendment struck that age requirement and added a different age requirement. And each of those was a substantive change to the law, not a mere clarification like Stewart was dealing with in 95B. Counsel, in People v. O'Neill, the State conceded that Stewart applied. Why have you changed your position? That was incorrect. And merely reading Stewart and applying the same analysis that Stewart used, but to 95A— What was incorrect, that you conceded or that you were incorrect in conceding? The concession was incorrect. Stewart does not apply. But you agree that in that—in O'Neill, the State conceded that Stewart applied. That was incorrect, Your Honor. That's not what I asked. Did the State concede in People v. O'Neill that Stewart applied? I don't remember O'Neill off the top of my head. If that's what the State did in that case, I can say it was incorrect. And merely applying the analysis in Stewart, the statutory subsection it issued here, will show why that was incorrect. And why the correct analysis is that the change to 95A was a substantive change to the law, not a mere clarification. Well, since you say you don't remember, just accept, you know, for argument's sake, that the State did concede in People v. O'Neill that Stewart applied. So what changed? Why are you changing your position? Reviewing Stewart, reviewing the arguments dealing with 95A rather than 95B, and using this Court's analysis in Stewart, the analysis to determine whether an amendment to a statute is a clarification or not, the correct answer is that the amendment to 95A was not a clarification, while in 95B the amendment was a clarification. Counsel, I wonder, how can it be a clarification? We have this intervening amendment that took it to 18, then we get to 21. How can you be clarifying that 18 now means 21? Where is the clarification in that? You can't. In 95A, there is no way that the 2021 amendment is consistent with the text of the 2016 amendment. The requirement that a defendant be 21 at the time of the first offense per sentencing enhancement is inconsistent with the requirement that a defendant be 18 at the time of the third offense. That proves that the 2021 amendment was a substantive change, was not a clarification as petitioner alleges. It's also worth pointing out that the 2021 amendment was not retroactive. That's the other argument that petitioner makes. Retroactivity doesn't apply in this case, and that was not what was at issue at Stewart either. So the default is that amendments to the law are prospective only, not retroactive. If an amendment is going to be retroactive, the legislature needs to state so clearly, or if the legislature does not make a specific statement, the default is the law applies prospectively only. Here, the legislature did indicate that the 2021 amendment to 95A is prospective only by putting a delayed implementation date on that act, on the public act that implemented the change. This court has already found that that particular delayed implementation date means that the change was prospective only in people v. Alvin Brown. So the other argument petitioner makes, retroactivity doesn't apply because the amendments change to section 95A had a delayed implementation date and was prospective only. Circling back briefly to the insufficiency of the proposed successive post-conviction petition, there is no constitutional right to the benefit of a subsequent more lenient change in sentencing statutes. And even if there were, that's a statutory issue, there is no constitutional right. So all petitioner is proposing is a statutory claim. And even so, there was no defect in the 1995 proceeding. He's pointing to something that happened 26 years after he was sentenced. That's not a defect in the original proceeding, so the claim is not cognizable in a post-conviction petition anyway. Counsel, in March of this year, this court issued an opinion in People v. Wallace. Can you tell me whether that opinion has any applicability to this case, the facts of this case, and how you'd like us to rule in this case? Your Honor, I'm afraid I'm not familiar with People v. Wallace. If that's something the court would like, we'd be happy to submit further briefing on it. Unless there are any other questions for these reasons and those in our brief, we ask that the court reverse the judgment of the appellate court. Thank you, counsel. Good morning. Good morning, Your Honors. May it please the court, I'm Arianne Stein on behalf of Corwin Brown. In Illinois, courts have long held that when identical language appears in different sections of the same statute, there is a presumption that it be given the same meaning. In Stewart, this court already interpreted the 2021 amendment to subsection B of the Habitual Criminal Act and determined that the legislature merely clarified the law and did not change it. Here, because the amendment to subsection A contains identical language and an identical effective date, it is also a clarification. And it defies common sense to think that the legislature amended parallel subsections using identical language and meant for one to be a clarification and the other to be a substantive change. Counsel? Thank you. With respect to a post-conviction petition, do you agree that you have to have a constitutional claim? Yes, Your Honor. And what is the constitutional claim here? There are two constitutional claims, Your Honor. There's a due process claim as well as a proportionate penalties claim. Under due process, because the legislature always intended the Habitual Criminal Act to prohibit life sentences for those whose predicates were committed before the age of 21, a due process violation occurred at the original sentencing hearing because a sentence that is not authorized by statute violates due process. Let me stop you on that one. So what about what the statute said in 1995 when your client was sentenced? Well, because the legislature clarified the statute, that means it's indicating the legislature was indicating what it always intended the statute to look like. And what about when they amended it and changed it to 18? Yes, Your Honor. So in 2016, the state is arguing that the 2016 amendment to subsection A shows that the 2021 amendment was a substantive change. They argue that because the legislature in 2016 amended subsection A to have the third offense occur at age 18. So the state is arguing, well, necessarily that means that the priors could occur as a juvenile. And then in 2021, the legislature changed the age of the first offense to 21, and so they argue that that is a substantive change. So when they changed it to 21, they were clarifying that they always meant that it should be 21, even though they previously amended it to be 18? They amended the third offense to be 18. They never focused or amended the predicate offenses. In subsection A and subsection B, the predicate offenses were never amended until they were amended at the same time in 2021 using identical language. The reading of the 2016 amendment that the state is proposing ignores the legislative actions and intent, which is the third factor that this Court considered in Stewart when looking at the three factors to determine if an amendment is a clarification. May I ask you a question about the history of the sentencing provisions? Your argument seems to be that we know what B means. Stewart says what B means. So therefore, A must mean the same thing, basically, is what you're arguing. Correct? Correct. So in 1994, when all of this happened, there were two separate statutes, correct? There was habitual criminal sentencing, which talked about two prior Class X convictions require a life sentence as a habitual criminal, and a separate section, a separate statute in a totally different part of the code called Class X Offender Sentencing. Now, later, those two separate statutes were combined into the statute that we're looking at now, right? But when we go back and we look at 1984, which is the moment that we certainly looked at in Spencer, they were totally different statutes, correct? That is correct. So your argument that A must mean the same as B, that's not how the statutory scheme was set out in 1994, was it? That's true, Your Honor. But we know from the legislative legislature's actions and intent in the 2016 amendment and 2021 amendment that they are clarifying the statute back to its inception, even before it was recodified in 2009, where it put the two sentences A and B together. So when did the two, again, one is in, I've got to write them down, but in any case, one was written in the habitual criminal sentence statute in one section, and then Class X Offender in a different section. When were they brought together that now we talk about A and B? That was in 2009. So not until 2009. That's correct. So through all the history that we're talking about from 94 on and everything that really Stewart was focusing on, at that time in 94 and on until 2009, they were completely separate statutes, correct? Correct, Your Honor. Yes, and the reading of the 2016 amendment that the State is proposing ignores the The legislature's focus in 2016 was on amending the entire sentencing code to comply with Miller to make sure that no one under the age of 18 received a life sentence. And, in fact, there were comments by State representatives at the proceedings on that public act that established that their intent was to change and inform the code to comply with Miller. So we know that the legislature's intent in 2016 was to limit more aggravating sentences. And they did that, correct? They did that. That's when, in that post-Miller world, they looked at this habitual criminal sentencing act and talked about that when the defendant in this specific case in front of the court was going to be sentenced based on prior convictions, and that third conviction, the defendant had to be 18 at the time. They addressed that, correct? That's correct. But they did not do anything about the two prior convictions. Correct. That's correct. So what do we take from that? So to read the 2016 amendment as purposely authorizing juvenile offenses to qualify someone for life sentences is in direct opposition to the legislature's stated intent to treat juveniles differently, less severely, with that 2016 amendment. And the legislature in 2016 was silent as to the age of the predicates, and then in 2021 it purposely changed the age of the predicates in both subsection A and B with identical language. Now, looking at the second factor as to whether an amendment is a clarification, the question is whether there is an ambiguity in the appellate courts about the application of the statute. And in Stewart, this court held and discussed that the split in authority that existed with subsection B. So the cases of Williams and Miles held that juvenile convictions could not serve as predicates for the class B sentence, but a case of people versus Reed held that they could. And even though those cases were ultimately ruling on subsection B, their analysis also dealt with subsection A. The language being analyzed in subsection B was identical to that in A. So logically, if there's an ambiguity with B, there's an ambiguity with A. And that language dealt with whether an offense is now classified as a class 1, 2, or X for the respective subsection. And the reason the courts were looking at that language is because there was an amendment to the Juvenile Court Act that increased the age, the minimum age of excluded minors. So the defendants in Miles and Reed and Williams argued that those prior offenses could no longer serve as predicates because they were no longer classified as And in Miles and Reed and Williams, the appellate court also discussed cases that ultimately ruled on subsection A, which are the Bryant and Banks cases, where the courts held that juvenile offenses could qualify somebody for a life sentence under subsection A. And Miles and Williams held that had Bryant and Banks been decided after the Juvenile Court Amendment, that their outcomes would have been different. So even though Miles and Williams and Reed ultimately ruled on subsection B, their analysis also dealt with the ambiguity that existed in subsection A. And concerning the first factor, whether an amendment is a clarification, that's whether the legislature has specifically stated it's clarifying. The legislature did not state that here, but they also did not state that for subsection B, and this court in Stewart held that that factor was not determinative. Counsel, I'd like to ask you the same question I asked your opponent. How does our decision in People v. Wallace, which was issued in March of this year, impact this case? I'm sorry, Your Honor, I'm also not familiar with the Wallace case. I can provide further briefing as the state suggested. And in the first and fourth district courts, in Durant and O'Neill, the courts held that the amendment here to subsection A, the natural life provision, was a clarification. And, in fact, as Justice Cunningham noted, in O'Neill, the state conceded that the amendment was a clarification after this court remanded to the Appellate Court and asked them to reconsider the issue in light of Stewart. What about the fact that in the case that we're talking about, there was a date, an effective date? How does that come into play? There was an effective date for Stewart as well, because in subsection A and B, they both had the same effective date. And in Stewart, the court held that that was not determinative. And the state brings up the case that... Isn't that something, a factor that we should consider? Shouldn't we be looking at that? The effective date is one factor, yes, that the court can consider. But as this court discussed in Stewart and cited to K. Miller, the effective date might only be one factor that the court considers. And that affecting legislative intent would be the most important factor to consider. And because the Stewart's interpretation of the clarification narrowed the scope of the statute, Durant applied the amendment retroactively on collateral review. And in this case, Brown was also sentenced under subsection A. And this court should follow that analysis in Durant and apply subsection A to Brown. As a final point, the state is arguing that Brown did not raise this issue in the circuit court. However, that's factually incorrect. First, the state conceded cause in the appellate court and in its opening brief before this court. So the state has conceded that Brown raised a constitutional claim. And in its briefs, the state only cites one of Brown's petitions. But Brown filed two motions for leave to file two different successive petitions in the circuit court. The circuit court denied those, and on appeal, the appellate court consolidated the dismissal of those petitions. In both petitions, Brown cited the 2021 amendment. In both petitions, he cited the proportionate penalties clause. And in the second petition, he specifically used the word retroactivity. To the extent that he added surplus language about this evolving law theory, or that he didn't use the specific word clarification, that does not negate that he submitted and stated sufficient facts in the petition to support a constitutional claim. Pro se litigants are not required to use certain legal phrasing or cite legal authority. They just need to state sufficient facts to support the claim. And Brown did that here in the appellate court. So for these reasons, the state has not rebutted the presumption that identical language in a statute should be given identical meaning. So subsection A, like B, should be viewed as a clarification. And Brown requests this court affirm the appellate court decision, vacate the sentence, and remand for resentencing. Thank you, counsel. Will there be any rebuttal?  To begin with petitioner's argument about identical language, the bare fact that two amendments have the same language does not mean that they are interpreted to mean exactly the same thing, because the meaning of those amendments derives, at least in part, from the surrounding context of the statutory section. And 95A and 95B have substantially different language. They have, for many parts of their history up until the 2021 amendment, and those differences generate different outcomes for applying the clarification analysis. To respond to a few points on the clarification analysis, petitioner is incorrect about confusion in the lower courts about the meaning of 95A. Petitioner points to no lower court cases where the courts were confused about the lack of an age requirement in section 95A prior to 2016. So unlike in Stewart, there is no split here. Correct. And we address this point in full in our reply brief on pages 14 and 15. But the bottom line is there is no split. Additionally, petitioner does not have any way to reconcile the differences in the text, the substantive differences in the text between the 2021 version of the statute, the 2016 version of the statute, and the prior version of the statute, which I believe dates back to 1977. Each of those contains a different substantive age requirement. No age requirement at all in the original version. 18 at the time of the third offense was added in the 2016 version, and then that age requirement was stricken and a new one was added in 2021. 21 at the time of the first offense. But none of the prior versions dealt at all with the predicates, did they? No, Your Honor. So it had never been considered, clarified, amended at all regarding predicates? No. The first time that was changed was the 2021 amendment. And you spoke earlier to the fact that these are completely separate, they should be treated separately. Is that how they were treated by the legislature in 2021 when they were doing these amendments? I'm sorry, I don't quite understand. When they amended this and used identical language, were they treating them separately as completely different then? They were amended at the same time by the same public act. But Stewart says that the amendment to 95B was a clarification, and applying the same analysis that Stewart did, the factors laid out in K. Miller. If you apply that to 95A, it generates a different conclusion. But what you said just a moment ago was different than that. You said that these are completely different. They deal with different things, that they're completely different. But that's not how the General Assembly dealt with them when they did the last amendment, correct? It's not that they are completely different. They are parallel. They're both sentencing enhancements. They're both sort of three-strikes rules, where when you get your third conviction, the sentencing enhancement kicks in. But the text of them has been different for their entire history up until 2021, and the age requirements for them were different up until 2021. And those textual and historical differences drive different outcomes when you apply the clarification analysis. Unless the Court has any other questions. I would like you to respond to opposing counsel's position that there is a constitutional violation here. Opposing counsel can point to no cases saying that there is a constitutional right to the benefit of a subsequent statutory amendment to a sentencing scheme, so no constitutional violation there. And even if Petitioner were correct that the amendment to 95A were a clarification, that's incorrect. But even if it were correct, this Court treated that as a statutory issue in Stewart, not a constitutional issue. This Court's holding in Stewart was that the defendant in that case was statutorily ineligible for the sentence that he received. The Court did not say that any of his constitutional rights had been violated. Unless the Court has any other questions, we ask that the Court reverse the judgment of the appellate court. Thank you. Thank you, counsel. Case number 130930, Cooper v. Brown, is taken under advisement as agenda number one.